IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>THOMAS O. CAMPBELL,<br><br>               Defendant. | 8:23CR142<br><br>AFFIDAVIT |

## DECLARATION OF RYAN KAPSIMALLIS, SPECIAL AGENT, INTERNAL REVENUE SERVICE

I, Ryan Kapsimallis, pursuant to 28 U.S.C. § 1746, declare and state:

1) I am a duly commissioned Special Agent working in the Criminal Investigation Division in the IRS with a post of duty in Omaha, Nebraska. I am a licensed Certified Public Accountant in the State of California and a licensed attorney in the State of Nebraska. Part of my duties as a Special Agent include providing expert testimony and litigation support for the government attorneys who handle criminal tax prosecutions on behalf of the United States. This support includes, but is not limited to, analyzing IRS and other financial records to research and compute outstanding balances of liabilities owed by defendants.

2) I am authorized to access the IRS Individual Master File and Business Master File, which are electronic records of tax filing, assessments, payments, refunds, and other information and can retrieve computerized information regarding accrued but unassessed statutory interest and penalties owing with respect to unpaid assessments.

3) In the course of my duties, I analyzed and reviewed IRS records and other financial records relating to the Defendant Thomas Campbell to compute outstanding

1

**GOVERNMENT EXHIBIT 1**

liabilities owed to the Government attributable to Thomas Campbell and summarize banking activity for the years at issue. I have personal knowledge of the facts stated herein and, if called as a witness at the sentencing of Thomas Campbell, would testify competently thereto.

4) I reconciled the three accounts with business activity to their respective statements. These include the Citi Credit Card, Bank of the West Trust Account 7560, and Bank of the West Business Account 7347. Once complete, I totaled the business deposits and business expenses not previously claimed on the Defendant's tax return for each respective year. I then subtracted the sum of the unclaimed and previously claimed expenses from the total business deposits to arrive at net income from the Defendant's business. The tax loss was computed from the difference between the net income I determined was earned by the Defendant's business and the net income the Defendant reported on his tax returns. My analysis was reviewed by Revenue Agent Jeremy Frey, who also assisted in calculating the tax loss. Revenue Agent Frey concluded the tax loss was at least $407,655.00.

### Business Deposits

5) My analysis of the banking records for 2014 through 2018 shows total business deposits made in and expenses paid from bank accounts for Thomas Niklitschek Law Office LLC Bank of the West account number ending in 7347 and Thomas Niklitschek Law Office NE Lawyers Trust Account Foundation Bank of the West account number ending in 7560 and expenses charged to Thomas L Niklitschek TLN Law LLC Citi Credit Card.

6) Covering five years, the banking statements for these accounts consist of many hundreds of pages.

7) I input the data from the bank statements into Microsoft Excel for the accounts listed above. I then reviewed the deposited items, which consisted primarily of customer checks, credit card deposits, and cash deposits. The deposited items were compared to business records

and information returns (e.g., Forms 1099 Misc., Miscellaneous Information and Forms 1099-K, Payment Card and Third-Party Network Transactions) filed by third parties reporting income earned from the Defendant's business. I then grouped the deposits into two categories: taxable and non-taxable. Based on this analysis, I determined the Defendant's gross receipts from his business were $671,741.00 in 2014, $840,784.00 in 2015, $786,123.00 in 2016, $1,077,758.00 in 2017, and $886,053.00 in 2018.

## Business Expenses

8) I reviewed the account statements described in paragraph 5 above and checks drawn on each respective account. I input the data into Microsoft Excel and identified payments that appeared to be business expenses. I compared the expenses identified to the expenses claimed on the Defendant's tax returns for the years 2014 through 2018 and determined the Defendant was entitled to additional expenses in each of the years. Most of the expenses appear to relate to personal injury cases, payments to individuals assisting the Defendant with case work, and various fees or payments related to case work.

9) In determining the amount of additional expenses, I assumed the Defendant was entitled to all expenses claimed on his originally filed tax returns for the years 2014 through 2018. I then increased the total expenses by the additional unclaimed expenses I was able to identify. Payments made from the Defendant's bank accounts and charges to the Defendant's credit cards that could not be identified as business related from the banking records and business records available were not included in the analysis. Based on this analysis, I determined the Defendant is entitled to an additional $137,064.71 for 2014, $425,086.78 for 2015, $340,347.34 for 2016, $395,294.53 for 2017, $305,388.33 for 2018.

10) I also reviewed expense summaries and supporting documents provided by Defense for the years 2016 through 2018. No records or summaries were provided for the years

2014 through 2015. The supporting documents were limited to account statements and check copies. These records were also reviewed by Revenue Agent Frey. It was determined that no additional adjustments to expenses were warranted because it was unclear if the additional expenses were deductible.

## Tax Loss

11)     After determining the correct gross receipts and the additional expenses the Defendant was entitled to, I was assisted by Revenue Agent Jeremy Frey in calculating the tax loss. In computing the tax loss, the corrected gross receipts were compared to the gross receipts reported on the Defendant's original tax returns for the years 2014 through 2018. Based on the comparison, I determined the Defendant understated his gross receipts from his business by $387,874.00 in 2014, $581,544.00 in 2015, $600,823.00 in 2016, $678,054.00 in 2017, and $638,938.00 in 2018. The amount of the understatement was then added to the gross receipts reported on the Defendant's tax returns for the years 2014 through 2018.

12)     After increasing the gross receipts on the Defendant's tax returns, I increased the total expenses claimed by the amount of additional business expenses identified in each respective year in the amounts listed in paragraph 9 above. The difference between the additional gross receipts and additional business expenses resulted in an additional tax due and owing of $70,815.00 in 2014, $42,927.00 in 2015, $92,496.00 in 2016, $100,635.00 in 2017, and $100,792.00 in 2018. The total tax loss was determined to be at least $407,665.00.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 28th day of November, 2023.

Ryan Kapsimallis
Special Agent, Internal Revenue Service