S IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | 8:23CR142 |
|---|---|
| Plaintiff, | |
| vs. | PLAINTIFF'S SENTENCING MEMORANDUM |
| THOMAS O. CAMPBELL, | |
| Defendant. | |

Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney for the District of Nebraska, offers its *Sentencing Memorandum* in advance of the hearing scheduled for November 30, 2023 at 10:00 a.m.

A.   **Procedural History.**

This case was initiated through the filing of Information on July 27, 2023 (Filing No. 6). A change of plea hearing was held the same day, at which the defendant pled guilty to the single count charged in the Information, a violation of Title 26, United States Code, Section 7206(1), Willfully Filing a False Tax Return. (Text Minute Entry No. 11). Defendant entered his guilty plea pursuant to a plea agreement with the government. (Filing No. 10.)

The Court adopted the Magistrate Judge's Findings and Recommendations on Plea of Guilty, found the defendant guilty, and accepted the plea on August 31, 2023. (Filing No. 18.) The Court deferred acceptance of the plea agreement pending review of the Presentence Investigation Report (PSR).

On October 2, 2023, defendant objected to the initial Modified Presentence Investigation Report but on November 22, 2023, he expressly withdrew his objections to the Revised Modified PSR. (PSR). (Filing No. 29, pp. 1, 5.) Thus, there are no objections to loss or restitution to be

1

resolved at the sentencing hearing, and Plaintiff submits that the Court should find that the specific tax loss and restitution are each in the amount of $407,665.

The Revised Modified PSR calculated that defendant had zero criminal history points placing him in criminal history category I. (PSR ¶ 73.) Defendant has an adjusted offense level of 18, reduced 2-levels pursuant to § 4C1.1 (zero-point offender), and 3-levels for acceptance of responsibility, establishing an adjusted total offense level of 13. (PSR ¶¶ 61-69.) Accordingly, defendant's sentencing guideline range is 12-18 months' imprisonment. (PSR ¶ 109.) Since the applicable guideline range is in Zone C of the Sentencing Table, the Guidelines call for a sentence of imprisonment or a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention…, provided that at least one half of the minimum term is satisfied by imprisonment. USSG § 5C1.1(d).

**B.  Factual Background.**

The factual background of this case is accurately set forth in ¶¶ 24-44, 47-55, and 59 of the PSR.

**C.  Sentencing Issues.**

*1.  Defendant's Motion for Downward Variance and/or Departure.*

Plaintiff opposes defendant's motion for downward variance. First, it is not uncommon for white collar defendants to not be a danger to society and to have no criminal history. And many white-collar defendants have professional licenses (CPA, Medical, Nursing, Law). The PSR suggests that a variance may be warranted due to the possibility that the defendant will be disbarred and lose his professional license. (PSR ¶ 135.) This is conjecture, acknowledged as such in defendant's sentencing memorandum. (Filing No. 29, p. 4.)  Furthermore, even if a collateral consequence of the defendant's conviction is being disbarred, losing one's license to practice law is not a criminal penalty, and therefore should not be treated as such. Second, many

criminal defendants face similar or even more significant consequences (deportation, loss of federal benefits, significant forfeiture) far great than losing one's professional license. Noncriminal consequences are not substitutes for criminal punishment provided by the sentencing guidelines.

Plaintiff also opposes defendant's motion for downward departure based upon USSG § 5C1.1, application note 10(B). Departures are appropriate if the sentencing court finds that there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. §5K2.0. The Guidelines provide that sentencing courts [are] to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, a court may consider whether a departure is warranted. USSG Ch. 1, Pt. A(4)(b). However, the Eighth Circuit has said "an extraordinary reduction must be supported by extraordinary circumstances." *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005) (discussing a § 5K1.1 departure).

While correct that the offense of conviction is not a crime of violence, defendant incorrectly assumes that a tax crime overstates the gravity of the offense because it is not an "otherwise serious offense." This is wishful thinking. Defendant has had over three years since the IRS obtained and executed a warrant to search his business and residence to make amends and to correct his behavior in anticipation of his inevitable sentencing. That the defendant is now seeking to avoid a sentence to imprisonment and has made a partial payment towards restitution based upon his projections of what is due does not make his crime less serious at the time he committed it. It is not an uncommon strategy in criminal tax cases for defendants to make full

restitution prior to sentencing to make this argument. But making payment to the government, in anticipation of sentencing, is hardly mitigating. In fact, it is equivalent to the bank robber returning the money after he gets caught.

As is typical in criminal tax prosecutions, the government demonstrated that the defendant engaged in a pattern of underreporting income over several years, suggesting that the defendant would have continued unabated but for the criminal investigation that ended it. Further, defendant's crime is not victimless, in that every taxpayer is affected when some decide, contrary to law, that they don't want to pay what they owe. Accordingly, Plaintiff requests that the Court deny defendant's motions for downward variance and departure.

2. *Loss amount and restitution.*

As indicated above, defendant has expressly withdrawn his objections to the PSR regarding loss amount and restitution. Although during the criminal investigation the defendant proposed, through counsel, an alternate calculation of his tax liability for tax years 2016-2018, the Internal Revenue Service (IRS) rejected defendant's calculations. To provide adequate consideration and due diligence to the defendant's proposed tax loss calculations and anticipating that the defendant may attempt to contest the amounts of tax loss and restitution at sentencing, Plaintiff requested a second-level review by an IRS Revenue Agent, who confirmed the amount of tax loss relating to defendant's 2014-2018 individual income tax returns to be *at least* $407,665.[1] Accordingly, the government maintains that the tax loss for sentencing and restitution purposes relating to defendant's underreporting of approximately $2.9 million in income during tax years 2014-2018 is $407,665. The United States Probation Office agrees with the government's calculation of tax loss. (PSR ¶¶ 59, 119.) The government has given the defendant

---

[1] Plaintiff's exhibits consist of an affidavit from IRS Special Agent Ryan Kapsimallis which provides further explanation.

4

every benefit of the doubt during the criminal investigation and is seeking no more than a finding that the correct tax loss amount for sentencing purposes is $407,665, and that restitution owed is also $407,665 (minus any amounts prepaid by the defendant prior to sentencing). (PSR ¶¶ 59, 119.)

      3.      *18 U.S.C. § 3553(a) Sentencing Factors.*

After making the initial Guidelines determination, a sentencing judge must consider the factors outlined in Title 18, United States Code, § 3553(a). Defendant is seeking a non-Guideline sentence to a term of probation. For the reasons below, the government submits that a sentence of 12 months' imprisonment – the low end of the applicable Guidelines range – is sufficient, but not greater than necessary, to address these sentencing factors.

Post-*Booker*, the Court must determine whether a non-Guideline sentence is appropriate after determining the Guidelines range and any permissible departures within the Guidelines structure. *United States v. Myers*, 503 F.3d 676, 684 (8th Cir. 2007). The Court has a "responsibility to select a sentence that [is] 'sufficient, but not greater than necessary' to comply with the statutory sentencing purposes." *United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). "[A] district court's job is not to impose a reasonable sentence, but rather to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). *United States v. Lytle*, 336 F. App'x 587, 588 (8th Cir. 2009).

      (a) Nature and circumstances of the offense and history and characteristics of the defendant.

The first factor that the Court must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The defendant's conduct in this case was not the result of a single lapse in judgment. Instead, over a period covering at least 5 years, the defendant filed numerous false tax returns with the IRS on

5

which he substantially underreported his income, causing hundreds of thousands of dollars in tax loss.

The defendant is an educated man who attended Weber State University in Utah, graduating in 2008. He then attended the University of Nebraska College of Law and obtained his juris doctor degree in 2011. He is bilingual, has traveled extensively, and is a self-professed published author. He has worked as an attorney since 2011. During the prosecution period he owned and operated his own successful law practice. The defendant knew he needed to accurately report his income on his tax returns.

To the extent that the defendant has framed his law practice as a necessary service to an underserved community, there is no denying that the defendant profited mightily and rapidly upon opening his own firm in 2014. However, his law practice is not an altruistic endeavor. Though he was making money hand over fist, he was also willfully underreporting hundreds of thousands of dollars in each of the first five years of the firm's operation. Instead of paying his taxes, the defendant used the money to fund a lavish lifestyle. *See* Exs. 2, 3; Filing No. 4. Defendant has offered no valid excuse for his flagrant disregard of his legal obligation to truthfully report his income and pay his taxes, and this weighs heavily in favor of a term of incarceration. The defendant's background and the nature of his crimes demonstrate that a term of imprisonment of 12 months is sufficient but not greater than necessary.

> (b) Need for sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

Section 3553(a)(2)(A) provides that a sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. The defendant's crimes are serious. The federal tax system, to a large extent, relies on the honesty and integrity of taxpayers along with their respect for the law. The Supreme Court has long

recognized that "[t]he United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures . . ." *Spies v. United States*, 317 U.S. 492, 495 (1943). A functioning government relies on its citizens and residents to report timely, completely, and honestly all the taxes they owe. Indeed, as Justice Oliver Wendell Holmes stated, "[t]axes are what we pay for a civilized society…" *Compania Gen. de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927). Therefore, it is vital that when a citizen violates tax laws they be appropriately punished. As the Guidelines § 2T1.1 introductory commentary aptly states, "[c]riminal tax prosecutions serve to punish the violator and promote respect for the tax laws." *See United States v. Zukerman*, 897 F.3d 423, 427 (2d Cir. 2018) (explaining that "tax crimes represent an especially damaging category of criminal offenses, which strike at the foundation of functioning government") (internal quotations and citations omitted).

    A sentence in the present case of probation would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. As determined by the United States Probation Office, defendant's guideline range is 12 to 18 months. This guideline is driven largely by the significant loss amount, which is more than $400,000 dollars. As noted in the PSR and the plea agreement, the conduct of the defendant took place over the course of multiple years resulting in a substantial concealment of his income.

    While the government commends the defendant for paying a portion of restitution in advance, and is accordingly recommending a three-point reduction for defendant's acceptance of responsibility, courts have indicated that choosing a sentence with a "single-minded" goal of facilitating restitution is improper. *United States v. Crisp*, 454 F.3d at 1287, 1290 (11th Cir. 2006). Likewise, rewarding a defendant for the eventual payment of taxes years after they were due, and only after the defendant was caught lying on his tax returns, and as part of a plea

7

agreement arising out of a criminal willful failure to file false returns charge is not a proper reason to vary or depart from the Guidelines and sentence him to probation.

        (c) Need for sentence to afford adequate deterrence to criminal conduct.

Another statutory factor set forth in 18 U.S.C. § 3553(a) is whether such a sentence would afford adequate deterrence to criminal conduct. Deterrence is of paramount importance for white-collar offenses. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' Defendants in financial crimes often calculate the financial gain and risk of loss, and financial crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *see also* Guidelines Ch. 1 Pt. A(4)(d) ("[T]he definite prospect of prison [for economic crime], even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-Guidelines practice where probation, not prison, was the norm.").

"[T]axes are the lifeblood of government, and their prompt and certain availability an impervious need." *Bull v. United States*, 295 U.S. 247, 259 (1935). Criminal tax prosecutions serve not only to punish the violators, but also to promote general deterrence and encourage all taxpayers to abide by the rules and pay their fair share of taxes. Recent data indicate a tax compliance rate by the general population of approximately 83.6%. *See* Internal Revenue Service, Tax Gap Estimates for Tax Years 2011-2013, May 2016. This means that while many individuals comply with the law, many others, like the defendant, shirk their taxpaying obligations. This comes at a real cost. The "gross tax gap" is estimated to be $441 billion annually. *Id*. This is money that cannot be spent on education, health care, the military, or the government's myriad other obligations. Fitting the defendant's disregard for his tax obligations

into this larger context demonstrates the seriousness of his offenses and the need to promote respect for the law.

Particularly that defendant is a highly visible attorney in the community and appears in several different courts within the community, the sentence should send a clear message that the law does not discriminate and the choice to commit economic crimes will have serious consequences. Part of promoting respect for the law is also maintaining confidence in the justice system.

The Sentencing Guidelines clearly articulate that deterrence should be the primary consideration when sentencing defendants for tax crimes. The reasoning is compelling. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from disobeying the tax laws is of the utmost importance when punishing criminal tax violations. *See* Guidelines § 2T1, introductory cmt. (2016) (explaining that, in light of "the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines," and that "[r]ecognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators."). Deterrence is particularly crucial in a case such as this where the defendant, an educated attorney, consciously and willfully violated the tax laws. It is this type of mentality that is most amenable to deterrence.

Absent such deterrence, other successful taxpayers with the means and opportunity to enrich themselves at the cost of others, will cynically conclude that the potential rewards of such criminal activity outweigh the risks of being caught and punished for committing tax fraud. *See United States v. Ture*, 450 F.3d 352, 358 (8th Cir. 2006) ("The goal of deterrence rings hollow if a prison sentence is not imposed."). The sentence imposed in this case should send a strong

message to other would-be tax cheats that imprisonment is a reality for those who willfully violate the internal revenue laws. The sentence should also assure law-abiding taxpayers that they are not credulous rubes for filing accurate tax returns and paying their share of taxes. In short, our nation's tax system depends on the voluntary compliance of honest taxpayers.

      Here, a significant sentence of imprisonment promotes voluntary compliance by making clear that there are consequences for hiding income from the government. In this case the defendant's crime is neither victimless nor minor. Every program the federal government administers, and funds is dependent on taxes paid into the United States treasury. Whether it is (for example) food aid for hungry children or care for veterans, this defendant's willful and greedy actions robbed the United States of over $400,000 dollars that could have gone towards those goals. Accordingly, this Court should sentence defendant to a term of imprisonment within the calculated Guidelines range.

//
//
//
//
//
//
//
//
//
//
//
//

**D.	Conclusion.**

For the reasons stated above, the government respectfully requests that the Court accept the plea agreement, sentence the defendant to 12 months of imprisonment, and order him to pay restitution in the amount of $407,665 (minus any amounts prepaid by the defendant prior to sentencing).

        UNITED STATES OF AMERICA,
        Plaintiff

        SUSAN T. LEHR
        Acting United States Attorney
        District of Nebraska

By:   s/ Christopher L. Ferretti
      CHRISTOPHER L. FERRETTI
      DC Bar #985340
      Assistant U.S. Attorney
      1620 Dodge Street, Suite 1400
      Omaha, NE 68102-1506
      Tel: (402) 661-3700
      Fax: (402) 345-5724
      E-mail: christopher.ferretti@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants. I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:

    Sandra Foster
    US Probation

        s/ Christopher L. Ferretti
        Assistant U.S. Attorney